RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0149p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 22-5624

TIFFANY RENEE MILLER,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Pikeville.
No. 7:21-cr-00009-1—Robert E. Wier, District Judge.

Decided and Filed: July 12, 2023

Before: GILMAN, LARSEN, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Noah R. Friend, NOAH R. FRIEND LAW FIRM, PLLC, Versailles, Kentucky, for Appellant. John Patrick Grant, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

───────────────

## OPINION

───────────────

RONALD LEE GILMAN, Circuit Judge. Following an incident in which both she and a state trooper were shot, Tiffany Renee Miller pleaded guilty to (1) possession of a firearm by a convicted felon, and (2) possession of a stolen firearm. The district court, after applying the cross-reference to attempted murder from the United States Sentencing Guidelines (U.S.S.G.), sentenced Miller to 240 months of imprisonment. This is the statutory maximum based on the firearms offenses to which she pleaded guilty. Miller appeals her sentence, arguing that it is both

procedurally and substantively unreasonable. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On July 10, 2021, the Kentucky State Police received a complaint that a woman (later identified as Miller) had stolen a truck from the driveway of a residence in Knott County, Kentucky. State Trooper Bradley Couch located the truck and, while in pursuit, commanded Miller over his cruiser's loudspeaker to pull over. Couch approached the truck and told Miller to get out of the vehicle. According to Couch, Miller responded, "I'm not going back to fucking jail," and she refused to open the truck's locked door.

When Couch opened the door with a key code that a police dispatcher had radioed to him from the truck's owner, Miller fired a single shot in his direction, hitting him in the shoulder. Couch and Miller were within several feet of each other when the shooting occurred. In Couch's words, "[i]t was basically a point-blank gunshot."

Couch and an additional trooper who arrived at the scene responded by firing nearly 50 rounds at Miller, who was struck multiple times. The evidence indicates that Miller might have fired one shot during the exchange of gunfire in addition to the shot that hit Couch in the shoulder. More troopers arrived, and they forcibly removed the injured Miller from the truck. The police found a stolen revolver between the truck's seat and the center console with three live rounds and two spent cartridges in the cylinder.

Miller later claimed that she did not mean to harm Couch. She said that "she intended to shoot by him to scare him, but had hit him by mistake." Miller also said that she usually "smoked a bowl or two" of methamphetamine every day and that she had smoked the drug that day as well. Both Trooper Couch and Miller survived the incident.

Miller ultimately pleaded guilty to (1) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and (2) possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). The Presentence Report, after applying the cross-reference to attempted murder, calculated Miller's tentative Guidelines range as 324 months to 405 months of

imprisonment.    Under U.S.S.G. §§ 5G1.1(a) and 5G1.2(d), however, her recommended Guidelines sentence was reduced to 240 months of imprisonment to match the maximum sentence that she could receive based on the firearms offenses to which she pleaded guilty.

Over Miller's objection, the district court applied the cross-reference to attempted murder and sentenced her to the statutory maximum sentence.  Miller now appeals her sentence as both procedurally and substantively unreasonable.

## II.  ANALYSIS

**A.    The sentence imposed by the district court is procedurally reasonable**

For a sentence to be procedurally reasonable, "[t]he court must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence."  *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018).  "We review a district court's efforts to touch each of these bases for abuse of discretion, keeping in mind that factual findings will stand unless clearly erroneous and legal conclusions will stand unless our fresh review leads to a contrary conclusion."  *Id.*

Miller argues that her sentence is procedurally unreasonable because the district court improperly calculated her Guidelines range.  "When a district court calculates the offense level for a firearms offense under the Sentencing Guidelines, the relevant guideline instructs it to consider whether the defendant used the firearm or ammunition 'in connection with the commission or attempted commission of another offense.'"  *United States v. Caston*, 851 F. App'x 557, 559 (6th Cir. 2021) (quoting U.S.S.G. § 2K2.1(c)(1)(A)).  In Miller's view, the district court erred by applying U.S.S.G. § 2A2.1's cross-reference to attempted murder rather than U.S.S.G. § 2A2.2's cross-reference to aggravated assault.

"[A]n attempt to commit murder requires a specific intent to kill."  *United States v. Howell*, 17 F.4th 673, 690 (6th Cir. 2021) (quoting *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991)).  To apply the attempted-murder cross-reference, a district court must therefore

find "by a preponderance of the evidence" that the defendant "possessed the specific intent to kill." *Id.* at 689-90.

In the present case, the district court concluded that the government "well crossed the threshold" to prove that Miller had the specific intent to kill Couch. The court reasoned as follows:

> She knows the trooper is pursuing her. She stops at the end of this obviously rural road she is not familiar with. She stops. She's trapped with the trooper behind, with all of his lights on. He approaches. She acknowledges that he's law enforcement. She declares forcefully that she's not going back to jail. She will not follow the trooper's directions, will not relent.
>
> The trooper gets the code to get into the truck, pops the door open, and she pivots and shoots him.
>
> Now, that's close quarters, close range. You can imagine, the trooper pops the door open and he gets shot in the right shoulder with an exit out the back. And, you know, were they three feet away? Four feet? Was there four feet separating them? Very close quarters.
>
> And the idea that she would somehow, in that sort of window of the arch of the doorway, or the door being opened, filled mostly by the person of Trooper Couch, that she would be thinking, Well, I'm going to shoot past him when he's right there in the doorway. It's just not a theory that the Court can buy.
>
> . . . .
>
> I think in close range, in this circumstance, when she shot at Trooper Couch, she was trying to shoot Trooper Couch. That's what she accomplished, and I think she did so with the specific intent to kill him and that is attempted murder.

A district court's factual finding is not clearly erroneous "so long as the finding is 'plausible in light of the record viewed in its entirety.'" *United States v. Grant*, 15 F.4th 452, 457 (6th Cir. 2021) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)); *see also United States v. Krimsky*, 230 F.3d 855, 860 (6th Cir. 2000) (explaining that "[w]hether a defendant has the requisite intent . . . is a question of fact"). Given the court's recitation of the evidence, we cannot say that its finding is implausible.

Miller argues that her intoxication and the presence of unspent rounds in the revolver cast doubt on the court's finding. "Where," however, "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Navarro-Camacho*, 186 F.3d 701, 708 (6th Cir. 1999). That is the situation here.

**B.    The sentence imposed by the district court is substantively reasonable**

Miller also claims that her sentence is substantively unreasonable. "We presume a within-Guidelines sentence is substantively reasonable. But a defendant can rebut this presumption if a district court chose a sentence arbitrarily, ignored pertinent § 3[5]53(a) factors, or gave unreasonable weight to any single factor." *United States v. Gardner*, 32 F.4th 504, 530 (6th Cir. 2022) (citation omitted). As with challenges to procedural reasonableness, the substantive reasonableness of a sentence is reviewed under the abuse-of-discretion standard. *Id.*

Here, Miller fails to rebut the presumption of reasonableness afforded to her recommended Guidelines sentence that was based on the crimes to which she pleaded guilty. She argues that the district court failed to recognize that she accepted responsibility for her actions by pleading guilty. But Miller's ultimate sentence (the statutory maximum) was well below the Presentence Report's tentative Guidelines range, which took into account Miller's acceptance of responsibility. The court also considered and rejected the argument that her plea warranted a downward variance. Miller's argument thus "'boils down to an assertion that the district court should have balanced the § 3553(a) factors differently,' which 'is simply beyond the scope of this court's appellate review.'" *United States v. Frei*, 995 F.3d 561, 567-68 (6th Cir. 2021) (quoting *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008)).

### III. CONCLUSION

For all of the foregoing reasons, we **AFFIRM** the judgment of the district court.